## BERWALD STEWART CO v MITCHELL

Ohio Appeals, 8th Dist, Cuyahoga Co

No 10796.   Decided Oct. 13, 1930

Boyd, Brooks & Wickham, Cleveland, for Berwald Stewart Co.

Arthur W. Hill, Cleveland, for Mitchell.

LEVINE, J.

It is contended by plaintiff that the bank in making its offer had the right to specify how it was to be accepted; that an inspection of the offer indicates that the bank intended that contractual relations were to

arise immediately upon its acceptance; that having submitted an offer which did not restrict in any manner the means, way or method by which it was to be accepted, except by the offeree affixing his name thereto, that therefore the offer was one which was to be accepted by the performance of an act and that the defendant in signing his name in the place provided, and the plaintiff mailing a notice of such acceptance before the revocation was received, were such acts and that the contract was complete when the notice of acceptance was dropped in the mail and that therefore the court's charge upon this subject was erroneous and prejudicial.

We are cited to many authorities on this subject, notably the case of Schubert Theatrical Co. vs Roth, 271 Fed. 827. Quoting from page 834:

"Authorization to communicate acceptance by mail is implied in two cases, (1), where the post is used to make the offer and says nothing as to how the answer is to be sent, (2), Where the circumstances are such that it must have been within the contemplation of the parties that according to the ordinary usages of mankind the post might be used as a means of communicating the acceptance."

Also Williston on Contracts:

"If an offer is made orally, but is left open for subsequent acceptance and the parties reside at a distance so that no subsequent personal meeting is apparently contemplated, an acceptance by mail would be authorized * * * the question whether that medium was authorized is one of fact; depending upon what would reasonably be expected by one in the position of the contracting parties, in view of prevailing business customs."

The defendant relies for the law applicable to this case on a quotation from Vol. 9, p. 267, and 6 Ruling Case Law, p. 613, which is as follows:

"Acceptance by Mail of offers made otherwise:—Where the mail is used to accept an offer not made by mail, it seems clear that if the letter of acceptance is actually delivered to the offerer within the the tim that the offer remains open, a contract results. Acceptance by mail of an offer made other than by mail may be impliedly authorized by the circumstances of the case, Where the circumstances are such that it must have been within the contempla-

tion of the parties that according to the ordinary usages, the postoffice might be used as a means of communicating the acceptance of an offer, the acceptance is complete as soon as it is posted. But in the ordinary case of the acceptance by mail of any offer made other than by mail, the contract is not completed when the letter of acceptance is mailed; the acceptance must be actually communicated to the offerer."

It will be noticed that in the very authority cited by the defendant it is therein stated "that acceptance by mail of an offer made other than by mail, may be impliedly authorized by the circumstances of the case."

It would seem, therefore, that the request of plaintiff suggesting to the court that he charge to the effect that "the implied authority to use the mails in accepting the offer could be determined by the circumstances surrounding the transaction, and the general usages of business as to whether or not it was within the contemplation of the parties that such means would be used" was a proper request and should have been given by the court. The refusal of the court, to use its own language, was based upon the ground that there was not a scintilla of evidence upon that subject. While it is true that nothing was said between the parties as to the manner in which the acceptance was to be communicated, yet it is not unreasonable to infer that since the method of communicating most important matters by means of the mail is a mode recognized in all commercial circles and the parties not having specified any particular method of communication, their acceptance by mail was impliedly authorized in this case. It is not correct to say that there is no evidence whatsoever on that subject, for the reason that we find that when the bank withdrew its offer and directed a communication to that effect to the plaintiff company, it did so by posting a letter in the mail to that effect. It would at least indicate the usage adopted by banking and commercial business houses.

This act of the bank in resorting to the mail when it posted its letter of withdrawal of the offer, addressed to the plaintiff company, would seem to indicate in the absence of anything to the contrary, that using the mail for the transaction of business was the approved method of the bank and it would not be unreasonable to infer

from that, that it expected to be communicated with, with reference to the acceptance of its offer, by its own approved method, namely, by means of the United States mail.

The refusal of the court to charge as requested, is, in our opinion, substantial error requiring the reversal of this case.

There is another point which occurs to us, even though it was not briefed by counsel, namely, the question of whether in order that the transaction between Mitchell and the bank constitute an offer and acceptance and hence a binding contract, the acceptance would have to be first communicated to the bank. It will be seen that the plaintiff company was the instrumentality upon which the offeror and the offeree depended. When the bank made its offer in writing, with a space reserved for the acceptance of the same by Mitchell, it handed the same to the plaintiff company. There was, of course, clear authority given to the plaintiff company by the bank to transmit the offer or to hand it in person to Mitchell. This the plaintiff company did and after some time had elapsed, enabling defendant to make a decision, he signed the acceptance and gave the same to the representative of plaintiff company. The plaintiff company was the medium through which the minds of the banking company and defendant met. The moment Mitchell signed the acceptance, and handed the same to the representative of plaintiff company, it can reasonably be urged that the contract was then consummated. There is enough in the record to justify the submission of the question as a question of fact as to whether or not the banking company and defendant Mitchell intended that the contract be considered accepted and hence consummated the moment the space reserved as acceptance by Mitchell was signed and the instrument handed over to the representative of the plaintiff company. If it should be found, as a matter of fact, that the parties intended that the plaintiff company be the means or instrumentality to act for them and in their behalf, then the moment the offer with the signed acceptance by Mitchell was handed over to the representative of the plaintiff company, the contract between the parties would be regarded as completed and in that event it would be too late for either party to withdraw the same.

Holding as we do, the judgment of the common pleas court will be reversed, and the cause remanded for a new trial.

Vickery, PJ, and Cline, J, concur.